UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
KARIMA WILLIAMS,

                    Plaintiff,

        -against-

CITY OF NEW YORK, MATTHEW
MONAHAN, and PIOTR ZEBROWSKI,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**


**PLAINTIFF DEMANDS
A TRIAL BY JURY**

       Plaintiff Karima Williams, by her attorneys, Lumer & Neville, as and for her

Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

       1.     At all times hereinafter mentioned, plaintiff Karima Williams, an adult

female, was a resident of Brooklyn, within the State of New York.

       2.     At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York,  and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

       3.     At all times hereinafter mentioned, defendant Matthew Monahan, Tax

Number 947263, was a member of the NYPD and employed, retained, trained, and

supervised by New York City.  Monahan is sued herein in his official and individual

capacities.

       4.     At all times hereinafter mentioned, defendant Piotr Zebrowski, Tax

Number 946410, was a member of the NYPD and employed, retained, trained, and

supervised  by New York City.  Zebrowsi is sued herein in his official and individual

capacities.

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,

1343 and 1367, and 42 U.S.C. § 1983.

6.      Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in

the Eastern District of New York, where plaintiff and defendant City of New York reside,

and where the majority of actions complained of herein occurred.

## RELEVANT FACTS

7.      At all relevant times herein, Karima Williams resided in Apartment 13G

at 875 Pennsylvania Ave., in Brooklyn, New York (the "premises").

8.      For a period of months prior to October 27, 2013, plaintiff had been

romantically involved with a man named Jamale Harpe.

9.      During the course of this relationship, Harpe had stayed in plaintiff's

apartment at the invitation of Ms. Williams.

10.     Prior to October 27, 2013, plaintiff terminated the relationship and

asked Harpe to remove his belongings from the premises.

11.     On October 27, 2013, Harpe came to the Premises for the purpose of

removing his belongings.

12.     Plaintiff had friends with her when Harpe arrived, and Harpe was

accompanied by his own friends.

13.     Plaintiff had packed Harpe's possessions and placed them near the front door prior to his arrival. When Harpe arrived, plaintiff met him at the door to the apartment and told him she did not want him to enter.

14.     Harpe accused plaintiff of not having packed all of his belongings, and angrily pushed past plaintiff in the premises.

15.     Plaintiff demanded that Harpe leave and the two argued about his presence in the premises.

16.     Harpe then punched and shattered a full length mirror that belonged to plaintiff, causing him to suffer various cuts to his hand, and to bleed.

17.     Harpe then deliberately flicked his blood onto plaintiff's bedding, and went into plaintiff's bathroom, where he broke her vanity.

18.     Plaintiff argued with Harpe about his conduct, and eventually he calmed down, exited the premises, and was in the hallway reviewing his belongings.

19.     At or about this time, defendants Monahan and Zebrowski arrived at the premises.

20.     Both individual defendants were wearing NYPD uniforms and were on duty.

21.     The defendants asked plaintiff and the other people present which one of them had called the police.

22.     In actuality, neither plaintiff nor Harpe had called the police, and plaintiff had no idea who had called the police.

23.     Plaintiff communicated this to the defendants, to which Monahan responded, in sum and substance, by threatening to arrest all of the people present and behaving in a verbally aggressive manner towards plaintiff.

24.     Eventually, Monahan told plaintiff to step out into the hall, and when plaintiff asked why, Monahan responded by reaching into the premises and pulling her into the hallway.

25.     Defendants then handcuffed and arrested plaintiff.

26.     Defendants transported plaintiff to a local Police Service Area, where she was kept imprisoned against her will.

27.      The decision to arrest plaintiff was objectively unreasonable under the circumstances.

28.     While plaintiff was unlawfully  imprisoned by the defendants, the defendants completed arrest paperwork which, upon information and belief, alleged that Harpe had told Monahan that plaintiff had "scratched [Harpe] about [Harpe's] face."

29.     These allegations were false, and Monahan knew them to be false at the time.

30.     Not only had plaintiff not attempted to or actually caused Harpe any injuries, Harpe himself had told the defendants that his injuries were all self-inflicted, and that plaintiff had not injured him.

31.     The defendants forwarded these false allegations to the Kings County District Attorney ("KCDA") to be presented to the New York City Criminal Court

("NYCCC") in order to justify the arrest and to persuade the KCDA or NYCCC to

commence and/or continue the plaintiffs' criminal prosecution.

32.     The defendants knew and understood that the KCDA and the NYCCC

were relying on the truthfulness of defendants' claims and statements in order to evaluate

whether to commence a criminal prosecution against the plaintiffs.  Defendants were aware

that the KCDA and the NYCCC assumed  that all of the factual statements, claims and

allegations that defendants relayed to the KCDA and the NYCCC  were truthful in all

material respects.

33.     Defendants further knew and understood that they were obligated to

provide any and all exculpatory information to the KCDA and the NYCCC,  and that

defendants were expected to turn over to or otherwise provide the KCDA with all material

information concerning the arrest, regardless of whether it was inculpatory or exculpatory.

34.     At no point did defendants inform the KCDA that they had been made

aware by Harpe and witnesses at the scene that plaintiff had not injured him.

35.     At no point did defendants inform the KCDA that they had been made

aware by Harpe and witnesses at the scene that Harpe had committed the crimes of trespass

and criminal mischief.

36.     Monahan swore out and signed a criminal complaint against plaintiff in

which he falsely alleged that he was told by Harpe that plaintiff had scratched him "about

[Harpe's] face."

37.     The KCDA, relying entirely on defendants' false representations,

initiated the prosecution against plaintiff under docket 2013KN083666.

38.     On October 28, 2013, plaintiff was arraigned on charges of Assault in the Third Degree, Attempted Assault in the Third Degree, and Menacing in the Third Degree, all based entirely on Monahan's deliberately false statements to the KCDA.

39.     On or about January 31, 2014, all of the criminal charges were formally dismissed in plaintiff's favor.

40.     At no time did defendants have probable cause to seize, detain or arrest any of the plaintiffs, nor was it reasonable for the defendants to believe that such cause existed.

41.     At no time did either of the individual defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the illegal, unlawful and unconstitutional conduct engaged in by their fellow officers against the two plaintiffs.

42.     That at all times relevant herein, the individual defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

**FIRST CAUSE OF ACTION**

43.     Plaintiff repeats the allegations contained in each of the preceding paragraphs above as though stated fully herein.

44.     Defendants willfully and intentionally seized, arrested, and imprisoned plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

45.     Defendants caused a criminal prosecution to be initiated against the plaintiff by fabricating evidence against plaintiff, and then forwarding this falsified evidence to the KCDA.

46.     By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, denial of a fair trial, and malicious prosecutio, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendment of the United States Constitution.

47.     By reason thereof, the individual defendants have violated  42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of her constitutional rights.

## SECOND CAUSE OF ACTION

48.     Plaintiff repeats the allegations contained in each of the preceding paragraphs above as though stated fully herein.

49.     Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD.

50.     Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD.  Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members

engaged in police conduct in a lawful and proper manner, including their use of their

authority as law enforcement officers with respect to the general public, including, and

specifically, the plaintiff herein.

       51.    The defendant City of New York deliberately and intentionally chose

not to take action to correct the chronic, systemic, and institutional misuse and abuse of

police authority by its NYPD employees, and thereby deliberately and  intentionally adopted,

condoned, and otherwise created through deliberate inaction and negligent supervision, an

NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests,

and detentions, and the manufacturing of evidence, in the ordinary course of NYPD

business in flagrant disregard of the state and federal constitutions, as well as the Patrol

Guide, up to and beyond the plaintiff's arrest.

       52.    All of the acts and omissions by the individual defendants described

above were carried out pursuant to overlapping policies and practices of the municipal

defendant in their capacities as police officers and officials pursuant to customs, policies,

usages, practices, procedures and rules of the City and the NYPD, all under the supervision

of ranking officers of the NYPD

       53.    The aforementioned customs, practices, procedures, and rules of the

City and the NYPD include, but are not limited to, the following unconstitutional practices:

         a.    Abusing their authority by making arrests without probable cause;

         b.    Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

8

      c.      Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

      d.      Retaliating against officers who report police misconduct; and

      e.      Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

54.     The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long running list of civil actions in this Court and in the Southern District of New York.

55.     In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

56.     Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

57.     It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that it was deliberately indifferent to the risk that the inadequate level of supervision would lead generally to the

violation of individuals' constitutional rights and caused this violation of plaintiff's rights.

58.     By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of her constitutional rights.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

]

]

]

THE REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

]

]

]

WHEREFORE, the plaintiff demands judgment against defendants jointly and

severally as follows:

        i.      on the first cause of action, actual and punitive damages in an amount to be determined at trial;

       ii.     on the second cause of action, actual damages in an amount to be determined at trial;

      iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

      iv.    such other relief as the Court may deem just and proper.

Dated:  New York, New York
         September 12, 2014

                                  LUMER & NEVILLE
                                  Attorneys for Plaintiffs
                                  225 Broadway, Suite 2700
                                  New York, New York 10007
                                  (212) 566-5060

                   By:  _____
                                 Michael Lumer (ML-1947)